UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EMMANUEL CARTAGENA-CORDERO,
    Plaintiff,

v.

FIVE STAR CARS, LLC, et al.,
    Defendants.

No. 3:19-cv-1728 (SRU)

## ORDER

On October 6, 2020, I granted in part and denied in part Cartagena-Cordero's third renewed motion for a default judgment against Five Star Cars, LLC ("Five Star"). *See* Order, Doc. No. 27. In that motion, Cartagena-Cordero had sought $55,298.84 in actual, statutory, and punitive damages. *See* Third Renewed Mot. for J., Doc. No. 26, at 1. I allowed Cartagena-Cordero to recover $14,762.04. *See* Order, Doc. No. 27, at 1. In relevant part, I awarded Cartagena-Cordero $1,002 in statutory damages for Five Star's violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* (the "TILA"). *See id.* at 25–26. On October 13, 2020, Cartagena-Cordero made a motion for reconsideration. *See* Mot. for Reconsideration, Doc. No. 29. In that motion, Cartagena-Cordero claims that he is entitled to $2,000 (rather than $1,002) in statutory damages for Five Star's TILA violations. *See id.* at 1. I agree, and so I **grant** Cartagena-Cordero's motion for reconsideration. The Clerk is instructed to amend the judgment accordingly.[1]

### I.    Standard of Review

---

[1]     An amended judgment should enter in favor of Cartagena-Cordero in the amount of $15,760.04, which is $998 more than the previous judgment in his favor. *See* Judgment, Doc. No. 28 (awarding judgment in the amount of $14,762.04).

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (cleaned up).

**II.     Background**[2]

    A.     Factual Background

On December 5, 2018, Cartagena-Cordero, a New Britain, Connecticut resident, visited Five Star, a used car dealership in Meriden, Connecticut. *See* Compl., Doc. No. 1, at ¶¶ 2–3, 9. Cartagena-Cordero visited Five Star because he was interested in a used 2008 Ford Super Duty F-250 SRW (the "Truck"), which he had seen advertised on cargurus.com. *See id.* at ¶ 9. Cartagena-Cordero learned that the Truck was advertised for $15,999 when he got to the Five Star dealership. *See* Aff. of E. Cartagena-Cordero, Doc. No. 26-4, at ¶ 6; Pl.'s Mem. of Law in Supp. Third Renewed Mot. for J., Doc. No. 26-1, at 17. Cartagena-Cordero agreed to buy the Truck for $15,999 and paid a $200 deposit. *See* Compl., Doc. No. 1, at ¶ 13.

---

[2]     For a full recitation of the background in this case, *see* Order, Doc. No. 27, at 4–11; *Cartagena-Cordero v. Five Star Cars, LLC, et al.*, 2020 WL 5912601, at *2–5 (D. Conn. Oct. 6, 2020). In this Order, I delve into the background only as necessary to explain my decision regarding the motion for reconsideration.

On December 6, Cartagena-Cordero returned to Five Star and paid an additional $3,000 towards a total down payment of $3,500.  *See id.* at ¶ 14.  (At that point, Cartagena-Cordero had paid $3,200 total.)  Cartagena-Cordero also claims that he "executed a purchase order," but "unbeknownst to [him], Five Star increased the purchase price [from $15,999] to $16,500 . . . ." *Id.* at ¶ 15.  Cartagena-Cordero explains that he "planned to finance the transaction," but he "did not execute a retail installment sales contract that day and was unaware that he needed to do so as part of a dealer-arranged financed transaction."  *Id.* at ¶ 16.  Cartagena-Cordero believes that Five Star increased the purchase price from $15,999 to $16,500 because "it planned to assign the retail installment sales contract to a discount finance company that would charge [a] fee or otherwise delay compensation in consideration of accepting the contract."  *Id.* at ¶ 17.  Thus, "to maintain suitable profit," Five Star "increased the cash price of the" Truck.  *Id.*  Cartagena-Cordero concludes:  The price increase "would not have been present in a comparable cash transaction and was incidental to the extension of credit."  *Id.*

On December 7, 2018, Five Star fraudulently (according to Cartagena-Cordero) executed a retail installment sales contract that it assigned to Westlake Services, LLC ("Westlake"), another former defendant in this action.  *See id.* at ¶ 18.  (I will refer to that retail installment sales contract as the "Forged Contract.")  That Forged Contract is signed electronically by Cartagena-Cordero in three places with a time stamp of 9:18:05 AM PST (12:18:05 PM EST). *See* Forged Contract, Ex. 2 to Aff. of E. Cartagena-Cordero, Doc. No. 26-4, at 18, 21.  But Cartagena-Cordero "could not have signed the Forged Contract at that time, because he was bowling with friends in East Hartford, Connecticut."  Compl., Doc. No. 1, at ¶ 20.  Indeed, Cartagena-Cordero alleges that he never saw a copy of the Forged Contract until March 2019, when he requested it from Westlake.  *See id.* at ¶ 22.  In the Forged Contract, the "$501 increase

to the cash price [of $15,999] was included as part of the amount financed in the itemization . . . instead of part of the finance charge." *Id.* at ¶ 21; *see also* Order, Doc. No. 27, at 8 n.6. Importantly, as Cartagena-Cordero now brings to my attention, the Forged Contract also listed a series of "Truth-In-Lending Disclosure[s]." *See* Forged Contract, Doc. No. 26-4, at 16. One of those disclosures was a "Finance Charge," which was defined on the Forged Contract as "[t]he dollar amount the credit will cost you." *Id.* The Forged Contract listed the "Finance Charge" as $7,079.08. *Id.*

>    B.    My Previous Order

In my order granting in part and denying in part Cartagena-Cordero's motion for a default judgment against Five Star, I held that Five Star had violated the TILA. The TILA requires creditors, such as Five Star,[3] to "disclose . . . [t]he 'finance charge,' not itemized, using that term." 15 U.S.C. § 1638(a)(3). Any "'finance charge' shall be disclosed more conspicuously than other terms, data, or information provided in connection with a transaction, except information relating to the identity of the creditor." 15 U.S.C. § 1632(a). A "finance charge" is "the cost of consumer credit as a dollar amount," and it "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). A "finance charge" does "not include any charge of a type payable in a comparable cash transaction." *Id.* And a "cash price" is "the price at which a creditor, in the ordinary course of business, offers to sell for cash property or service that is the subject of the transaction." 12 C.F.R. § 226.2(a)(9). The term "cash price" "does not include any finance charge." *Id.*

---

[3]    *See* Order, Doc. No. 27, at 13 n.13 (explaining why Five Star is a "creditor" under the TILA).

I agreed with Cartagena-Cordero that Five Star had violated the TILA in two ways. The first was by "burying" the $501 finance charge within the $16,500 "cash price" of the Truck. *See* Order, Doc. No. 27, at 15. The second was by failing to give Cartagena-Cordero a copy of the retail sales installment contract. *See id.* Cartagena-Cordero does not dispute that analysis in his motion for reconsideration.

Regarding the damages due to Cartagena-Cordero for Five Star's TILA violations, I held as follows:

> Under the TILA, "any creditor who fails to comply with any requirement imposed under this part . . . is liable" for "any actual damage sustained by such person as a result of the failure." 15 U.S.C. § 1640(a)(1). In an individual action, the creditor will be liable for "twice the amount of any finance charge in connection with the transaction." *Id.* § 1640(a)(2)(A)(i). Depending on the type of individual action, a statutory cap on damages might apply. Cartagena-Cordero claims that he "is entitled to recover actual damages and statutory damages of double the finance charge of $7,079.08 pursuant to 15 U.S.C. § 1638(a)(2)(A)(ii) [*sic*] capped at $2,000." Pl.'s Mem. of Law, Doc. No. 26-1, at 11. Thus, Cartagena-Cordero seeks to recover statutory damages of $2,000. *See id.* at 26. Cartagena-Cordero's assessment is off the mark. The finance charge at issue amounts to $501, not $7,079.08. Indeed, it is entirely unclear from where Cartagena-Cordero produces the $7,079.08 figure. Cartagena-Cordero does not allege any "actual damages" he suffered as a result of Five Star's TILA violation beyond the concealed finance charge. Thus, I hold that, for Five Star's violation of the TILA, Cartagena-Cordero is entitled to "twice the amount of any finance charge in connection with the transaction," which is $1,002.

*Id.* at 25–26 (internal footnotes omitted).

In his motion for reconsideration, Cartagena-Cordero claims that I was wrong when I held that "the finance charge at issue amounts to $501, not $7,079.08" and when I remarked that "it is entirely unclear from where Cartagena-Cordero produces the $7,079.08 figure." *Id.* at 26. Cartagena-Cordero now points me to the source of the $7,079.08 figure: The first page of the Forged Contract. *See* Mem. in Supp. Mot. for Reconsideration ("Cartagena-Cordero's Mem. of Law"), Doc. No. 29-1, at 1–2; *see also* Forged Contract, Doc. No. 26-4, at 16 (listing "Finance

Charge" as "$7079.08"). The $7,079.08 "Finance Charge" on the first page of the Forged Contract is described as "[t]he dollar amount the credit will cost you." Forged Contract, Doc. No. 26-4, at 16. It is thus also a "finance charge" within the meaning of the TILA. *See* 15 U.S.C. § 1605(a) (defining "finance charge" as, in part, "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit"); 12 C.F.R. § 226.4(a) ("The finance charge is the cost of consumer credit as a dollar amount.").

Cartagena-Cordero points out that he may recover "twice the amount of any finance charge **in connection with the transaction**.'" Cartagena-Cordero's Mem. of Law, Doc. No. 29-1, at 3 (quoting 15 U.S.C. § 1640(a)(2)(A)(i)). Cartagena-Cordero claims that—because the "finance charge in connection with the transaction" in this case was $7,079.08 rather than $501—I erred when I "double[d] only the amount of [the] finance charge that was buried in the cost of the goods." *Id.* Cartagena-Cordero explains that "[t]he definition of finance charge under TILA is considered to be the entirety of the finance charge, not components thereof." *Id.* at 4. Cartagena-Cordero claims that doubling the *entire* finance charge—rather than a portion of the finance charge—is the method "routinely used in calculating TILA damages." *Id.* at 4–6 (citing *Hernandez v. Apple Auto Wholesalers of Waterbury, LLC*, 2020 WL 2543785, at *16 (D. Conn. May 18, 2020); *Alexis v. PMM Enters., LLC*, 2018 WL 5456491, at *3 (D. Conn. Oct. 29, 2018)).

I agree with Cartagena-Cordero so far as he goes with that argument. Before Cartagena-Cordero made his motion for reconsideration, it was unclear to me that the amount of the "finance charge in connection with the transaction" in this case was anything more than the $501 difference between the Truck's advertised and agreed-on cash price ($15,999) and its increased

purchase price ($16,500). *See* Order, Doc. No. 27, at 26. Indeed, in his motion for default judgment and accompanying memorandum of law, Cartagena-Cordero mentioned the figure $7,079.08 just once, without citation to the record.[4] It would have been helpful for Cartagena-Cordero to point out from where he was deriving that figure. In any event, to calculate the proper amount of statutory damages, I doubled what I considered to the "amount of any finance charge in connection with the transaction," $501, to get $1,002. *Id.* Now that I am aware, though, that the finance charge in connection with the transaction is $7,079.08 (which exceeds the statutory maximum), I agree with Cartagena-Cordero that he is entitled to recover that statutory maximum: $2,000. *See* 15 U.S.C. § 1640(a)(2)(A). I thus grant Cartagena-Cordero's motion for reconsideration because I overlooked data—the finance charge in the Forged Contract—that led me to double only a portion of Cartagena-Cordero's finance charge rather than the entire finance charge.[5] *Analytical Surveys*, 684 F.3d at 52.

However, to the extent that Cartagena-Cordero argues that I should reconsider my ruling because I overlooked applicable United States Supreme Court precedent, I disagree. Cartagena-Cordero writes that the Supreme Court has held that "in close-ended credit transaction[s], like the one in this case, the calculation [for TILA statutory damages] is double the entire finance charge capped as stated in § 1640[(a)](2)(A)(ii), presently $2,000." Cartagena-Cordero's Mem. of Law, Doc. No. 29-1, at 3.

---

[4]     *See* Cartagena-Cordero's Mem. of Law in Supp. Third Renewed Mot. for J., Doc. No. 26-1, at 11 ("Plaintiff is entitled to recover actual damages and statutory damages of double the finance charge of $7,079.08 . . . capped at $2,000.").

[5]     I agree with Cartagena-Cordero that, where the finance charge is stated in a contract, courts tend to double the finance charge as stated in the contract when calculating statutory damages pursuant to the TILA. *See, e.g.*, *Hernandez*, 2020 WL 2543785, at *16.

7

Cartagena-Cordero cites *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50 (2004), for that rule.[6] *See* Cartagena-Cordero's Mem. of Law, Doc. No. 29-1, at 3–4. In *Nigh*, the plaintiff had sued a used car dealership for, among other things, a violation of the TILA. *Nigh*, 543 U.S. at 58. The plaintiff "sought uncapped recovery of twice the finance charge, an amount equal to $24,192.80," but Koons Buick "urged a $1,000 limitation on statutory damages under § 1640(a)(2)(A)(i)." *Id.* The jury awarded Nigh $24,192.80. *Id.* The Fourth Circuit affirmed. *Id.*; *see also Nigh v. Koons Buick Pontiac GMC, Inc.*, 319 F.3d 119 (4th Cir. 2003). But the Supreme Court reversed and held that Nigh's damages were capped at $1,000. *Nigh*, 543 U.S. at 59–60.

The *Nigh* Court's ruling regarded whether the relevant statutory cap—which was then $1,000—applied to Nigh's recovery. That was a question of statutory interpretation that arose because of the inartful evolution of 15 U.S.C. § 1640(a). At the time of the *Nigh* case (in 2004), section 1640(a) provided for statutory damages equal to:

> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease . . . 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000, or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000 . . . .

*Id.* at 56 (quoting 15 U.S.C. § 1640(a)). The question was whether the phrase "except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000"—which

---

[6] As Cartagena-Cordero correctly points out, I discussed the district court case associated with that Supreme Court case at length in my previous Order in this matter. *See* Order, Doc. No. 27, at 17–19 (discussing *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 563 (E.D. Va. 2001)). My discussion of that district court case did not regard the TILA but, rather, the Federal Odometer Act, 49 U.S.C. § 32701, *et seq.*

I also previously noted in my discussion about the district court case that I was aware of the case's subsequent procedural history at the Fourth Circuit and in the Supreme Court. *See id.* at 17 n.16. However, I noted that "neither the Fourth Circuit nor the Supreme Court discussed at all the *Nigh* Court's holding regarding the FOA. Instead, both courts focused on a separate question pertaining to the TILA. In my view, it is not clear whether the *Nigh* Court's holding regarding the FOA was a subject of appeal." *Id.*

appeared in section 1640(a)(2)(A)(ii)—applied to statutory recoveries under section 1640(a)(2)(A)(i).  The *Nigh* Court held that that phrase *did* apply to such statutory recoveries, and so Nigh's recovery was capped at $1,000.  To resolve the question, the *Nigh* Court traced the history of section 1640 and relied on "both the conventional meaning of 'subparagraph' and standard interpretive guides."  *Id.* at 60.  Although the *Nigh* Court noted, in passing, that "the jury awarded Nigh $24,192.80 (twice the amount of the finance charge)," the *Nigh* Court *did not* discuss how to calculate finance charges or how to double them under the statute.  *Id.* at 58.  Thus, the *Nigh* Court's holding is inapposite to the issue that Cartagena-Cordero asks me to reconsider, and it is not a "controlling decision" that I overlooked.

### III.     Conclusion

Cartagena-Cordero's motion for reconsideration, doc. no. 29, is **granted**.  The Clerk is instructed to enter an amended judgment in favor of Cartagena-Cordero and against Five Star in the amount of $15,760.04.

So ordered.

Dated at Bridgeport, Connecticut, this 15th day of October 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge